IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JOHNNA JOWANNA MIMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 114-239 |
| | ) | |
| GEORGIA DEPARTMENT OF | ) | |
| CORRECTIONS; GEORGIA PEACE | ) | |
| OFFICER STANDARDS & TRAINING | ) | |
| COUNCIL; CAREY BARNES, | ) | |
| Commissioner's Designee for Adverse | ) | |
| Actions; JULIE LEWANDOWSKI, | ) | |
| GA P.O.S.T. Investigator; TOMEIKA | ) | |
| T. JORDAN, GDC Internal Affairs | ) | |
| Investigator; MICHAEL S. SHEPARD, | ) | |
| Warden; T.J. CONLEY, Deputy | ) | |
| Warden of Security; SERGEANT | ) | |
| MICHAEL MCNEIL; JESSICA | ) | |
| LEE, Corrections Officer, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff commenced the above-captioned employment discrimination case *pro se* and is proceeding *in forma pauperis* ("IFP"). (Doc. no. 2.) On February 11, 2015, the Court, in a Report and Recommendation and accompanying Order, allowed Plaintiff's claims of retaliation under the Family and Medical Leave Act ("FMLA") to proceed while recommending dismissal of her claims of discrimination under the Americans with Disabilities Act. (Doc. nos. 6, 8.) On March 18, 2015, Plaintiff filed an amended complaint attempting to add new defendants and new claims which did not comply with Federal Rule

of Civil Procedure 15. (Doc. no. 9.) As a result, the Court ordered Plaintiff to file a new complaint with all defendants and all claims in one document. (Doc. no. 10.) On April 8, 2015, Plaintiff filed a new complaint in compliance with the Court's Order. (Doc. no. 20.) Because she is proceeding IFP, Plaintiff's amended complaint must now be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984).

## I. SCREENING OF THE COMPLAINT

### A. BACKGROUND

Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows. Plaintiff was formerly employed by Augusta State Medical Prison as a correctional officer in the kitchen. (See doc. no. 20, p. 3.) On February 23, 2014, Plaintiff's mother became very ill and was transferred to the intensive care unit at Georgia Regents University. (Id. at 3-4.) On February 24, 2014, Plaintiff saw Defendant Warden Michael Shepard making rounds at the hospital and told him that she would not be able to come into work that night due to her mother's condition. (Id. at 4.) Warden Shepard instructed Plaintiff to call her supervisor, Lieutenant Harmon, and advise him that she would be unable to come to work. (Id.) Plaintiff subsequently submitted the required paperwork and was approved to take leave under the Family and Medical Leave Act ("FMLA"). (Id.)

Plaintiff returned to work on March 5, 2014. (Id.) After relieving Defendant Officer Jessica Lee, an inmate asked Plaintiff how her mother was doing, informing Plaintiff that Officer Lee told him that her mother had suffered a stroke, was in the ICU at Georgia Regents University Hospital, and that she was not doing well. (Id.) This information was

2

apparently gleaned by the inmates from Officer Lee. (Id.) On March 29, 2015, Plaintiff was informed by inmates of a verbal complaint submitted by Officer Lee to Defendant Sergeant McNeil. (Id.) Officer Lee criticized Plaintiff's work ethic by alleging that she was a bad worker, was never on top of her job, and always made her wait at the gate for twenty minutes because Plaintiff was sleeping. (Id.) Officer Lee submitted a similar complaint in writing to Sgt. McNeil, which she showed to inmates. (Id.)

Early on March 30, 2014 while working in the kitchen, Plaintiff was informed by another inmate of Officer Lee's complaint to Sgt. McNeil and its disclosure to prisoners. (Id.) Food service manager Mildred Gilliam also informed Plaintiff of the same conduct. (Id.) At 6:10 a.m., upon opening the gate to let in Officer Lee, Plaintiff attempted to talk to Officer Lee about her concerns with the information shared with inmates and the complaints about her work ethic. (Id.) After Officer Lee cursed at Plaintiff twice, their conversation turned into a verbal altercation and, shortly thereafter, into a physical altercation. (Id.) After the altercation stopped, Officer Lee followed Plaintiff, told her she had embarrassed herself and lost her job, and repeatedly pushed Plaintiff. (Id.) Sergeant Lewis escorted Plaintiff to the visitation area after the altercation where she told Plaintiff that she could not get witness statements. (Id. at 5.) After Plaintiff wrote a statement describing the altercation, she was allowed to leave the prison. (Id.)

On March 31, 2014, Plaintiff and Officer Lee meet with Defendant T.J. Conley, Deputy Warden of Security, who allowed Officer Lee to present a defense and witness statements but did not allow Plaintiff to do so. (Id.) When Plaintiff was allowed to give her side of the story, Mr. Conley repeatedly interrupted her, refused to listen to her side of the

3

story, told her she was lying, and that she did not have any proof. (Id.) Mr. Conley also told Plaintiff that even if she was allowed to get witness statements, he would not allow Plaintiff to use them because Plaintiff would be lying. (Id.) On April 1, 2014, Plaintiff met with Warden Shepard and explained her version of events and that she was not allowed to submit a defense at the meeting with Mr. Conley. (Id.) Nonetheless, Warden Shepard suspended her pending an investigation by internal affairs. (Id.)

On April 4, 2014, Plaintiff met with Defendant Investigator Tomeika Jordan, who informed Plaintiff that it was not looking good for her and that if she caught Plaintiff lying, she would add another charge to her two pending charges. (Id.) Investigator Jordan explained that the two pending charges were simple assault and violation of oath. (Id.) In response, Plaintiff explained to Investigator Jordan that she was being treated unfavorably in comparison to Officer Lee, she was not allowed to take witness statements, Officer Lee had also broken prison policies, and Mr. Conley refused to listen to her side of the story. (Id.) Investigator Jordan responded that the minute she admitted to pushing Officer Lee, the investigation became criminal and Mr. Conley was not required to respond. (Id.)

On April 7, 2014, Warden Shepard terminated Plaintiff's employment at Augusta State Medical Prison. (Id. at 6.) At the meeting, Warden Shepard informed Plaintiff that they had attempted to press charges, but the District Attorney did not want to prosecute the case. (Id.) He also stated that they were giving the evidence to Officer Lee and telling her to press charges. (Id.) Warden Shepard also submitted an email to the personnel department stating that Plaintiff had assaulted Officer Lee and requested a no re-hire code be placed on Plaintiff's correctional officer certifications. (Id.)

4

On April 11, 2014, Defendant Carey Barnes, the commissioner's designee for adverse actions, instructed Plaintiff to put the events in writing and fax it to him, which Plaintiff did. (Id.) On May 15, Plaintiff received a letter from Carey Barnes upholding her termination due to Plaintiff admitting the allegations forming the basis of the termination. (Id.) In response to this letter, Plaintiff submitted another letter explaining the unequal treatment she received. Defendant Barnes did not respond. (Id.) On May 22, 2014, Plaintiff submitted an open records request to the Georgia Department of Corrections Legal Office regarding the files and evidence leading to her termination. (Id.) On May 23, 2014, Plaintiff issued a subpoena for the same files as well. (Id.) On May 27, 2014, Plaintiff received a letter denying her request. (Id.)

On April 16, 2014, Defendant Julie Lewandowski sent Plaintiff a letter regarding a hearing to determine the status of her certifications as a correctional officer, and on September 10, 2014, Plaintiff's case was presented to Defendant Georgia Peace Officer Standards and Training Council ("POST"). (Id.) In regards to this hearing, Defendant Lewandowski created a false report that matched Officer Lee's description of events that was submitted to the Council. (Id.) On December 30, 2014, Plaintiff submitted a letter to the Council informing them that Defendant Lewandowski had submitted a false case summary. (Id. at 7) On January 10, 2015, Plaintiff received a letter from Defendant Lewandowski's supervisor stating that she had handled the case properly. (Id. at 7)

Plaintiff asserts that Sgt. McNeil destroyed statements written on her behalf and Captain Gibbons stated he would get rid of every person taking family leave if he had his way. (Id. at 6.) In addition, Plaintiff alleges that she has been retaliated against for utilizing

5

FMLA leave because Officer Lee was not given the same treatment as her despite engaging in the same conduct. (Id.)

Plaintiff wishes to proceed with an FMLA retaliation claim against all Defendants in their official capacities and with Due Process and Equal Protection claims against all Defendants in their individual and official capacities. (Id. at 7-8.) Plaintiff also wishes to proceed against Officer Jessica Lee with a defamation claim. (Id. at 7.) In regard to these claims, Plaintiff requests compensatory damages, punitive damages, and injunctive relief. (Id. at 9.)

### B. DISCUSSION

#### 1. Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, of if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. § 1915(e)(2)(B). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 327 (1989). Moreover, "[f]ailure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

6

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff's FMLA Claims Against Defendant POST and the Individual Defendants Should be Dismissed.

[1]Plaintiff alleges retaliation for her use of leave under the FMLA against all Defendants in their official capacities. (See doc no. 20, p. 7.) Plaintiff has listed the Georgia

---

[1] As noted in a prior order, Defendant cannot state a claim under the FMLA against the individual defendants in their individual capacities because they would not be considered the "employer." See Wascura v. Carver, 169 F.3d 683, 686 (11th Cir. 1999). In her amended complaint, Plaintiff is only making FMLA claims against them in their official capacities. (Doc. no. 20, p. 7.)

7

Department of Corrections and POST as Defendants in addition to several individual defendants in their official capacities working for these two governmental entities. (Id. at 1.) However, Plaintiff's claims against the individuals are cumulative and should be dismissed because it is against them in their official capacities.

An official capacity claim is, in substance, a proceeding against the governmental entity. See Kentucky v. Graham, 473 U.S. 159, 166 (1985); Clifton v. Georgia Merit Sys., 478 F. Supp. 2d 1356, 1362 (N.D. Ga. 2007). Therefore, as to Plaintiff's FMLA claims, there is no cognizable difference between bringing the claims against the individual defendants and the governmental entities listed as defendants. As a result, allowing Plaintiff's FMLA claims to go forward against all defendants in their official capacities would be "redundant" and "possibly confusing to [a] jury." Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991). Accordingly, Plaintiff's official capacity FMLA claims in the amended complaint against Defendants Barnes, Jordan, Shepard, Conley, McNeil, Lewandowski, and Lee should be dismissed.

Plaintiff can also not state a claim for FMLA retaliation against Defendant POST. The FMLA is explicit that an FMLA retaliation claim can only be brought against an "employer." 29 U.S.C.§ 2615(a)(2); See Wascura v. Carver, 169 F.3d 683, 686 (11th Cir. 1999). Plaintiff's complaint is clear that Defendant POST was simply the governmental subdivision that maintained her correctional officer certifications and was not her employer. (Doc. no. 20, p. 6.) Rather, Defendant Georgia Department of Corrections is the alleged employer under the FMLA in this case. (Id.) Accordingly, Plaintiff's FMLA retaliation claims against Defendant POST should be dismissed.

### 3. The Eleventh Amendment Bars Plaintiff's Due Process Claims against Defendants Georgia Department of Corrections and POST.

"The Eleventh Amendment insulates a state from suit brought by individuals in federal court unless the state either consents to suit or waives its Eleventh Amendment immunity." Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (footnote omitted, citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)). Arms or agencies of the state are therefore immune from suit. See Alabama v. Pugh, 438 U.S. 781, 782 (1978) ("There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [Georgia] has consented to the filing of such a suit."); Edelman v. Jordan, 415 U.S. 651, 663 (1974); Stevens, 864 F.2d at 115 (Georgia Department of Corrections is barred from suit by Eleventh Amendment). Thus, absent consent from the state, a state and its agencies may not be directly sued regardless of the relief sought by the plaintiff. See Kentucky v. Graham, 473 U.S. 159, 167, n. 14 (1985).

Here, both the Georgia Department of Corrections and POST are state agencies under direct control by the state of Georgia. Stevens, 864 F.2d at 115; Evans v. Georgia Peace Officer Standards & Training Council, CV 105-2579, 2006 WL 870335, at *3 (N.D. Ga. Mar. 29, 2006). Further, these two defendants are also not "persons" capable of being sued under 42 U.S.C. § 1983. See Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1524 (11th Cir. 1995). Thus, Plaintiff's claims against these defendants under the Due Process Clause are

barred by the Eleventh Amendment and should be dismissed.[2]

> **4. The Eleventh Amendment Bars Plaintiff's Due Process Claims for Damages Against the Individual Defendants in their Official Capacities.**

As discussed above, Plaintiff's claims for damages under the Due Process Clause against the individual defendants in their official capacities implicates the Eleventh Amendment and "state officials sued for damages in their official capacity are immune from suit in federal court." Jackson v. Georgia Dep't of Transp., 16 F.3d 1573, 1575 (11th Cir. 1994). Thus, Plaintiff cannot state a claim for damages under the Due Process Clause against Defendants Barnes, Jordan, Shepard, Conley, McNeil, Lewandowski, and Lee in their official capacities.

> **5. Plaintiff Does Not State a Claim Against Defendant Julie Lewandowski under the Due Process Clause**

In order to state a claim for the denial of procedural due process under the Fourteenth Amendment, a plaintiff must allege (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process. Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). Plaintiff states in her complaint that "[o]n September 10, 2014, my case was presented to the council regarding my certifications" and "no actions were taken . . . ." regarding the investigation and her hearing with Defendant POST. (Doc. no. 20, p. 6.) Plaintiff is merely complaining that Defendant Lewandowski, a

---

[2] Defendant Georgia Department of Corrections is not immune under the Eleventh Amendment to the FMLA claim because Congress abrogated state immunity under the enforcement clause of the Fourteenth Amendment regarding the family-care provisions. See Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721, 722-23 (2003).

POST investigator, wrote a false report to Defendant POST but does not allege that any adverse actions were taken by POST with regard to her certifications. (Id.) Thus, Plaintiff has not alleged a deprivation of a constitutionally-protected liberty or property interest in relation to the actions of Defendants Lewandowski or POST. Accordingly, Plaintiff's procedural due process claim against Defendants Lewandowski and POST should be dismissed.

### 6. Plaintiff Cannot State a Claim Under the Equal Protection Clause

In her complaint, Plaintiff asserts that Defendants violated the Equal Protection Clause by treating her unequally in relation to Officer Jessica Lee. (Doc. no. 20, p. 8.) However, this claim is foreclosed by Supreme Court precedent. In Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 595 (2008), an Oregon state employee attempted to bring an equal protection "class of one" claim similar to the claim Plaintiff raises here by alleging she was terminated for arbitrary, vindictive, and malicious reasons. The Supreme Court held that "class-of-one theory of equal protection has no application in the public employment context." Engquist, 553 U.S. at 607. Importantly, Plaintiff does not claim disparate treatment based on her membership in a distinct class. (See doc no. 20.) Thus, Plaintiff cannot state a claim under the Equal Protection Clause based on the adverse actions by her employer, and this claim should be dismissed.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Court **DISMISS** (1) Plaintiff's FMLA claims against Defendants POST, Barnes, Jordan, Shepard, Conley, McNeil, Lewandowski, and Lee; (2) Plaintiff's due process claims against Defendants Georgia Department of Corrections, POST, and Lewandowski; (3) Plaintiff's due process claims for damages against Defendants Barnes, Jordan, Shepard, Conley, McNeil, and Lee in their official capacities; (4) Plaintiff's equal protection claims against all Defendants; and (5) all claims against Defendants POST and Lewandowski.

SO REPORTED and RECOMMENDED this 29th day of July, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA