IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JOHNNA JOWANNA MIMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 114-239 |
| | ) | |
| GEORGIA DEPARTMENT OF | ) | |
| CORRECTIONS; GEORGIA PEACE | ) | |
| OFFICER STANDARDS & TRAINING | ) | |
| COUNCIL; CAREY BARNES, | ) | |
| Commissioner's Designee for Adverse | ) | |
| Actions; JULIE LEWANDOWSKI, | ) | |
| GA P.O.S.T. Investigator; TOMEIKA | ) | |
| T. JORDAN, GDC Internal Affairs | ) | |
| Investigator; MICHAEL S. SHEPARD, | ) | |
| Warden; T.J. CONLEY, Deputy | ) | |
| Warden of Security; SERGEANT | ) | |
| MICHAEL MCNEIL; JESSICA | ) | |
| LEE, Corrections Officer, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**O R D E R**
_____

Plaintiff commenced the above-captioned employment discrimination case *pro se* and

is proceeding *in forma pauperis* ("IFP"). (Doc. no. 2.) On February 11, 2015, the Court, in a

Report and Recommendation and accompanying Order, allowed Plaintiff's claims of

retaliation under the Family and Medical Leave Act ("FMLA") to proceed while

recommending dismissal of her claims of discrimination under the Americans with

Disabilities Act. (Doc. nos. 6, 8.) On March 18, 2015, Plaintiff filed an amended complaint

attempting to add new defendants and new claims which did not comply with Federal Rule

of Civil Procedure 15.  (Doc. no. 9.)  As a result, the Court ordered Plaintiff to file a new complaint with all defendants and all claims in one document.  (Doc. no. 10.)  On April 8, 2015, Plaintiff filed a new complaint in compliance with the Court's Order.  (Doc. no. 20.)  Because she is proceeding IFP, Plaintiff's amended complaint must now be screened to protect potential defendants.  Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984).

## I.    SCREENING OF THE COMPLAINT

### A.    BACKGROUND

Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.  Plaintiff was formerly employed by Augusta State Medical Prison as a correctional officer in the kitchen.  (See doc. no. 20, p. 3.)  On February 23, 2014, Plaintiff's mother became very ill and was transferred to the intensive care unit at Georgia Regents University.  (Id. at 3-4.)  On February 24, 2014, Plaintiff saw Defendant Warden Michael Shepard making rounds at the hospital and told him that she would not be able to come into work that night due to her mother's condition.  (Id. at 4.)  Warden Shepard instructed Plaintiff to call her supervisor, Lieutenant Harmon, and advise him that she would be unable to come to work.  (Id.)  Plaintiff subsequently submitted the required paperwork and was approved to take leave under the Family and Medical Leave Act ("FMLA").  (Id.)

Plaintiff returned to work on March 5, 2014.  (Id.)  After relieving Defendant Officer Jessica Lee, an inmate asked Plaintiff how her mother was doing, informing Plaintiff that Officer Lee told him that her mother had suffered a stroke, was in the ICU at Georgia Regents University Hospital, and that she was not doing well.  (Id.)  This information was

2

apparently gleaned by the inmates from Officer Lee. (Id.) On March 29, 2015, Plaintiff was informed by inmates of a verbal complaint submitted by Officer Lee to Defendant Sergeant McNeil. (Id.) Officer Lee criticized Plaintiff's work ethic by alleging that she was a bad worker, was never on top of her job, and always made her wait at the gate for twenty minutes because Plaintiff was sleeping. (Id.) Officer Lee submitted a similar complaint in writing to Sgt. McNeil, which she showed to inmates. (Id.)

Early on March 30, 2014 while working in the kitchen, Plaintiff was informed by another inmate of Officer Lee's complaint to Sgt. McNeil and its disclosure to prisoners. (Id.) Food service manager Mildred Gilliam also informed Plaintiff of the same conduct. (Id.) At 6:10 a.m., upon opening the gate to let in Officer Lee, Plaintiff attempted to talk to Officer Lee about her concerns with the information shared with inmates and the complaints about her work ethic. (Id.) After Officer Lee cursed at Plaintiff twice, their conversation turned into a verbal altercation and, shortly thereafter, into a physical altercation. (Id.) After the altercation stopped, Officer Lee followed Plaintiff, told her she had embarrassed herself and lost her job, and repeatedly pushed Plaintiff. (Id.) Sergeant Lewis escorted Plaintiff to the visitation area after the altercation where she told Plaintiff that she could not get witness statements. (Id. at 5.) After Plaintiff wrote a statement describing the altercation, she was allowed to leave the prison. (Id.)

On March 31, 2014, Plaintiff and Officer Lee meet with Defendant T.J. Conley, Deputy Warden of Security, who allowed Officer Lee to present a defense and witness statements but did not allow Plaintiff to do so. (Id.) When Plaintiff was allowed to give her side of the story, Mr. Conley repeatedly interrupted her, refused to listen to her side of the

story, told her she was lying, and that she did not have any proof. (Id.) Mr. Conley also told Plaintiff that even if she was allowed to get witness statements, he would not allow Plaintiff to use them because Plaintiff would be lying. (Id.) On April 1, 2014, Plaintiff met with Warden Shepard and explained her version of events and that she was not allowed to submit a defense at the meeting with Mr. Conley. (Id.) Nonetheless, Warden Shepard suspended her pending an investigation by internal affairs. (Id.)

On April 4, 2014, Plaintiff met with Defendant Investigator Tomeika Jordan, who informed Plaintiff that it was not looking good for her and that if she caught Plaintiff lying, she would add another charge to her two pending charges. (Id.) Investigator Jordan explained that the two pending charges were simple assault and violation of oath. (Id.) In response, Plaintiff explained to Investigator Jordan that she was being treated unfavorably in comparison to Officer Lee, she was not allowed to take witness statements, Officer Lee had also broken prison policies, and Mr. Conley refused to listen to her side of the story. (Id.) Investigator Jordan responded that the minute she admitted to pushing Officer Lee, the investigation became criminal and Mr. Conley was not required to respond. (Id.)

On April 7, 2014, Warden Shepard terminated Plaintiff's employment at Augusta State Medical Prison. (Id. at 6.) At the meeting, Warden Shepard informed Plaintiff that they had attempted to press charges, but the District Attorney did not want to prosecute the case. (Id.) He also stated that they were giving the evidence to Officer Lee and telling her to press charges. (Id.) Warden Shepard also submitted an email to the personnel department stating that Plaintiff had assaulted Officer Lee and requested a no re-hire code be placed on Plaintiff's correctional officer certifications. (Id.)

4

On April 11, 2014, Defendant Carey Barnes, the commissioner's designee for adverse actions, instructed Plaintiff to put the events in writing and fax it to him, which Plaintiff did. (Id.) On May 15, Plaintiff received a letter from Carey Barnes upholding her termination due to Plaintiff admitting the allegations forming the basis of the termination. (Id.) In response to this letter, Plaintiff submitted another letter explaining the unequal treatment she received. Defendant Barnes did not respond. (Id.) On May 22, 2014, Plaintiff submitted an open records request to the Georgia Department of Corrections Legal Office regarding the files and evidence leading to her termination. (Id.) On May 23, 2014, Plaintiff issued a subpoena for the same files as well. (Id.) On May 27, 2014, Plaintiff received a letter denying her request. (Id.)

On April 16, 2014, Defendant Julie Lewandowski sent Plaintiff a letter regarding a hearing to determine the status of her certifications as a correctional officer, and on September 10, 2014, Plaintiff's case was presented to Defendant Georgia Peace Officer Standards and Training Council ("POST"). (Id.) In regards to this hearing, Defendant Lewandowski created a false report that matched Officer Lee's description of events that was submitted to the Council. (Id.) On December 30, 2014, Plaintiff submitted a letter to the Council informing them that Defendant Lewandowski had submitted a false case summary. (Id. at 7) On January 10, 2015, Plaintiff received a letter from Defendant Lewandowski's supervisor stating that she had handled the case properly. (Id. at 7)

Plaintiff asserts that Sgt. McNeil destroyed statements written on her behalf and Captain Gibbons stated he would get rid of every person taking family leave if he had his way. (Id. at 6.) In addition, Plaintiff alleges that she has been retaliated against for utilizing

5

FMLA leave because Officer Lee was not given the same treatment as her despite engaging in the same conduct.  (Id.)

Plaintiff wishes to proceed with an FMLA retaliation claim against all Defendants in their official capacities and with Due Process and Equal Protection claims against all Defendants in their individual and official capacities.  (Id. at 7-8.)  Plaintiff also wishes to proceed against Officer Jessica Lee with a defamation claim.  (Id. at 7.)  In regard to these claims, Plaintiff requests compensatory damages, punitive damages, and injunctive relief. (Id. at 9.)

Liberally construing Plaintiff's allegations in her favor and granting her the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that Plaintiff has arguably stated a viable FMLA retaliation claim against Defendant Georgia Department of Corrections.  See Brungart v. BellSouth Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000) (finding proximity in time is sufficient to raise an inference of causation); Martin v. Brevard Cnty. Pub. Sch., 543 F.3d 1261, 1268 (11th Cir. 2008) (stating a prima facie FMLA retaliation claim consists of demonstrating that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment decision, and (3) the decision was causally related to the protected activity); 29 C.F.R. § 825.104 ("Employers covered by FMLA also include any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer").  The Court also finds that Plaintiff has arguably stated a viable procedural due process claim against Defendants Barnes, Jordan, Shepard, Conley, McNeil,and Lee.  See Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003) ("[A] § 1983 claim alleging a denial of procedural due process requires proof of three

elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process.")

Finally, the Court finds that Plaintiff has also stated an arguably viable claim for defamation against Defendant Officer Jessica Lee in her individual capacity. Infinite Energy, Inc. v. Pardue, , 713 S.E.2d 456, 460 (Ga. Ct. App. 2011) ("A cause of action for defamation consists of four elements: '(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm.'"). Although this is a state law claim, the Court elects to exercise supplemental jurisdiction over this claim under 28 U.S.C. § 1367.

In a companion Report and Recommendation, the Court recommends dismissal of (1) Plaintiff's FMLA claims against Defendants POST, Barnes, Jordan, Shepard, Conley, McNeil, Lewandowski, and Lee; (2) Plaintiff's due process claims against Defendants Georgia Department of Corrections, POST, and Lewandowski ; (3) Plaintiff's due process claims for damages against Defendants Barnes, Jordan, Shepard, Conley, McNeil, and Lee in their official capacities; (4) Plaintiff's equal protection claims against all Defendants; and (5) all claims against Defendants POST and Lewandowski.

## II.    INSTRUCTIONS

**IT IS HEREBY ORDERED** that service of process shall be effected on Defendant Georgia Department of Corrections.[1]    The United States Marshal shall mail a copy of the

---

[1] The other defendants in this action have already waived service and received the amended complaint. (See doc. no. 21.)

amended complaint (doc. no. 20) and this Order by first-class mail and request that the defendant waive formal service of the summons. Fed. R. Civ. P. 4(d). Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of personal service unless good cause can be shown for failure to return the waiver. Fed. R. Civ. P. 4(d)(2). A defendant whose return of the waiver is timely does not have to answer the complaint until sixty days after the date the Marshal mails the request for waiver. Fed. R. Civ. P. 4(d)(3). However, service must be effected within 120 days of the date of this Order, and the failure to do so may result in the dismissal of any unserved defendant. Fed. R. Civ. P. 4(m). Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate the defendants to effect service.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon the defendant, or upon its defense attorney if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court. Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendant or their counsel. Fed. R. Civ. P. 5; Loc. R. 5.1. Every pleading shall contain a caption setting forth the name of the court, the title of the action, and the file number. Fed. R. Civ. P. 10(a). Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by the defendants. Upon being given at least five days notice of the scheduled deposition date,

Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case. The defendants shall ensure that Plaintiff's deposition and any other depositions in the case are taken within the 140-day discovery period allowed by this Court's Local Rules.

While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case.

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Loc. R. 41.1. If Plaintiff wishes to obtain facts and information about the case from the defendants, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery). Plaintiff should begin discovery promptly and complete it within four months after the filing of the last answer of a defendant named in the amended complaint screened herein.

Interrogatories are a practical method of discovery for *pro se* litigants. See Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five questions. Id. Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing; when a party needs such materials in connection with a

motion or response, and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, he should first contact the attorney for the defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Loc. R. 26.5.

Plaintiff must maintain a set of records for the case. If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Loc. R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

A response to a motion for summary judgment must be filed within twenty-one days after service of the motion. Loc. R. 7.5, 56.1. A failure to respond shall indicate that there is no opposition to the motion. Loc. R. 7.5. Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should a defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine issue as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he

desires to contest the defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these: any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

SO ORDERED this 29th day of July, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA