IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

JOHNNA JOWANNA MIMS,                *
                                    *
     Plaintiff,                     *
                                    *
           v.                       *     CV 114-239
                                    *
CAREY BARNES, TOMEIKA T.            *
JORDAN, MICHAEL STANTON             *
SHEPARD, T.J. CONLEY, SERGEANT      *
MICHAEL MCNEIL, and OFFICER         *
JESSICA LEE, in their               *
individual and official             *
capacities; and GEORGIA             *
DEPARTMENT OF CORRECTIONS,          *
                                    *
     Defendants.                    *

# O R D E R

Presently before the Court is Defendants Barnes, Jordan, Shepard, Conley, McNeil, and Lee's motion to dismiss (Doc. 27). For the reasons below, their motion is **GRANTED**.

## I. BACKGROUND

On April 7, 2014, Plaintiff was terminated from her position as a correctional officer at the Augusta State Medical Prison. (Sec. Am. Compl., Doc. 20, at 6.) Subsequently, Plaintiff, proceeding pro se, filed suit in this Court on December 24, 2014. (Compl., Doc. 1.) Since that time, the Court has narrowed Plaintiff's claims to include the following: (1) a Family Medical Leave Act ("FMLA") claim against the

Georgia Department of Corrections; (2) a procedural due process claim for damages against Carey Barnes, Tomeika T. Jordan, Michael Stanton Shepard, T.J. Conley, Michael McNeil, and Jessica Lee in their individual capacities; (3) a procedural due process claim for injunctive relief against Barnes, Jordan, Shepard, Conley, McNeil, and Lee in their official capacities; and (4) a defamation claim against Lee. (Doc. 28.) With the hope of further limiting Plaintiff's claims, Defendants Barnes, Jordan, Shepard, Conley, McNeil, and Lee, in their individual and official capacities, have filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (Doc. 27.) The facts underlying this motion, as set forth in Plaintiff's complaint and accepted as true by the Court, are as follows.

On February 23, 2014, Plaintiff's mother became quite ill and was admitted to the intensive care unit at Georgia Regents University Hospital. (Sec. Am. Compl. at 3.) While visiting

---

[1] In response to Defendants' motion, Plaintiff filed a memorandum in opposition along with exhibits for the Court's consideration. (Doc. 33.) Because these exhibits are "matters outside the pleadings," the Court must either exclude them or treat the instant motion as one for summary judgment. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); Prop. Mgmt. & Invs., Inc. v. Lewis, 752 F.2d 599, 604 (11th Cir. 1985) ("The court has discretion as to whether to accept material beyond the pleading[s] that is offered in conjunction with a 12(b)(6) motion."). Yet, because the Court must assume that all facts pleaded in the complaint are true, Plaintiff's exhibits have little - if any - additional value. Therefore, the Court elects to exclude them.

2

her mother at the hospital on February 24, 2014, Plaintiff encountered three employees of the Augusta State Medical Prison: Warden Michael Shepard, Sergeant Michael McNeil, and Officer Jessica Lee. (Id. at 4.) Accordingly, Plaintiff took the opportunity to inform Warden Shepard of her mother's condition and her possible need to take family leave. (Id.) Upon the advisement of Shepard, Plaintiff then informed her supervisor that she would be unable to work and submitted the necessary FMLA paperwork. (Id.)

When her mother's health improved, Plaintiff returned to work on March 5, 2014. (Id.) Upon her arrival, Plaintiff was asked by an inmate how her mother was doing. (Id.) The inmate stated that Officer Lee, who worked the same post as Plaintiff, "had informed him that [Plaintiff's mother] had suffered from a stroke, . . . was in Intensive Care at Georgia Regents University on the third floor, and . . . was not doing well." (Id.) Plaintiff responded by telling the inmate that "he was lying and it was none of his business." (Id.)

Weeks later, on the evening of March 29, 2014, two inmates approached Plaintiff and told her that "Officer Lee and Sergeant McNeil was [sic] on the phone during the day . . . criticiz[ing] [her] work ethic." (Id.) Based on the rest of her conversation with these inmates, Plaintiff indicates that Lee and McNeil's conversation proceeded as follows:

3

> They criticized my work ethic saying that I
> am always have [sic] [Lee] waiting at the
> gate for twenty minutes because I am
> sleeping, I am a bad worker, I am never on
> top of my job, and she will stop relieving
> me. They stated that Sergeant Mitchell
> instructed her to write a statement and send
> it up to Security.

(Id.) Yet, before sending it, Officer Lee showed the inmates and different food service personnel her statement. (Id.)

On the next day, March 30, another inmate and service manager Mildred Gilliam advised Plaintiff of Officer Lee's behavior and remarks. (Id.) Thus, when Officer Lee arrived at the prison later that day, Plaintiff "attempted to talk the issue out with Officer Lee and express [her] concerns" about what Officer Lee had been telling the inmates. (Id.) Then, as Plaintiff did so, Officer Lee cursed at her twice, and the two officers engaged in a verbal and physical altercation. (Id.) Even as the altercation was coming to an apparent end, Officer Lee "followed [Plaintiff] all the way on the other side of the kitchen and began pushing [Plaintiff] again in [her] back." (Id.) Officer Lee then told Plaintiff that she had embarrassed herself and lost her job and badge. (Id.)

After arriving at the scene of the struggle, Sergeant Lewis escorted Plaintiff to security. (Id.) Along the way, Plaintiff told Sergeant Lewis what happened and expressed her need to get witness statements. (Id.) Because of direction given by Sergeant Brown, Sergeant Lewis took Plaintiff to the visitation

4

area and told her not to move. (Id. at 4-5.) There, after making a written statement about what had transpired, Plaintiff was given the "okay" to leave the prison but could not go back to the kitchen area to get witness statements. (Id. at 5.)

A day later, on March 31, Plaintiff and Officer Lee met with Lieutenant Orby Harmon, Lieutenant David Eason, Captain Gibbons, and Deputy Warden T.J. Conley. (Id.) First, Officer Lee told her version of the events that unfolded on the previous day. (Id.) Then, Plaintiff was given the opportunity to do so. (Id.) However, as she did so, Deputy Warden Conley interrupted Plaintiff, refused to listen to Plaintiff's side of the story, and told Plaintiff that she was lying and that she did not have any proof. (Id.) Consequently, Plaintiff told Deputy Warden Conley that it seemed "as if they had rehearsed how the meeting would go." The deputy warden responded by telling Plaintiff to hush and to get out of his office. (Id.)

On April 1, 2014, Plaintiff met with Warden Shepard and Deputy Warden of Administration Elizabeth Roberts. (Id.) Within that meeting, Plaintiff told her side of the dispute, including her inability to prepare and submit a proper defense as to the accusations against her. (Id.) Yet, Warden Shepard did not acknowledge or address Plaintiff's concerns and instead suspended Plaintiff with pay until she could speak with an internal affairs investigator. (Id.)

5

Consistent with the warden's wishes, Plaintiff met with Internal Affairs Investigator Tomeika T. Jordan on April 4, 2014. (Id.) After immediately telling Plaintiff that "it is not looking good" for her, Investigator Jordan then told Plaintiff that she "might as well come on in and tell the truth" because if Plaintiff lied, "another charge" would be added to her then-pending charges of assault and violation of oath. (Id.) Once inside with Investigator Jordan, Plaintiff relayed her concerns regarding the prison's selective policy enforcement, her inability to collect witness statements, and Deputy Warden Conley's unwillingness to hear her whole story. (Id.)

Ultimately, on April 7, 2014, Warden Shepard terminated Plaintiff's employment with the medical prison. (Id. at 6.) Thereafter, Plaintiff learned that Warden Shepard had submitted an email to officials in Forsyth, Georgia, requesting that a "no re-hire code" be placed on her certifications. (Id.) In response, Plaintiff submitted a timely appeal to the Commissioner's Designee for Adverse Actions, Carey Barnes, but her termination was upheld. (Id.)

In spite of her unsuccessful appeal, Plaintiff contacted the Georgia Department of Corrections with a request for all files and evidence stemming from her termination. (Id.) However, Plaintiff's request was denied. (Id.) Moreover, regarding Plaintiff's certifications, Plaintiff maintains that

6

"Julie Lewandowski intentionally created a false report that favored and matched Officer Lee's and her witness's [sic] testimony without taking anything that [Plaintiff] submitted into consideration." (Id.) Plaintiff also maintains that "Sergeant McNeil destroyed statements that were written on [her] behalf to prevent the truth from coming out." (Id.)

## II. DISCUSSION

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The Court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The Court, however, need not accept the complaint's legal conclusions as true – only its well-pleaded facts. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Finally, although pro se pleadings should be liberally construed, Hughes v. Lott 350 F.3d 1157, 1160 (11th Cir. 2003), that leniency does not allow the Court to "rewrite an otherwise deficient pleading in order to sustain an action." GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds by Iqbal, 556 U.S. 662.

### A. Procedural Due Process Claims

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. According to Supreme Court precedent, this clause provides two types of constitutional protection – procedural due process and substantive due process – such that "a violation of either may form the basis for a suit under 42 U.S.C. § 1983." Price v. City of Ormond Beach, Fla., No. 6:05-cv-1064, 2006 WL 1382096, at *4 (M.D. Fla. May 19, 2006). As for a § 1983 claim alleging a denial of procedural due process, that "requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Arrington v. Helms, 438 F.3d 1336, 1347 (11th Cir. 2006). In this case, Defendants maintain that Plaintiff's due process claims should be dismissed

because Plaintiff has failed to adequately plead element one – a deprivation of a constitutionally-protected property or liberty interest.

Because constitutionally-protected property interests "stem not from the Constitution, but from such sources as statutes, regulations, ordinances, and contracts," the Court must first look to Georgia's employment statutes. Id. at 1348. As an at-will employment state, Georgia does not provide employees with an innate property interest in employment. See O.C.G.A. § 34-7-1 ("An indefinite hiring may be terminated at will by either."). Thus, to survive Defendants' motion, Plaintiff must have produced facts sufficient to demonstrate that another source created her property interest in continued employment. Over the years, plaintiffs have met this burden by alleging, *inter alia*, that they had an unexpired employment contract or that they had received a promise that their contract would be renewed. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 576 (1977). Conversely, here, Plaintiff has alleged no facts suggesting that she has a property interest in her continued employment with the medical prison. For that reason, Plaintiff's procedural due process claim, to the extent that it is based on a deprivation of a constitutionally-protected property interest, is dismissed.

Meanwhile, for a deprivation of Plaintiff's constitutionally-protected liberty interest to have occurred, a state actor must have "threaten[ed] serious damage to [her] standing and association in the community" or "foreclose[d] [her] freedom to take advantage of other employment opportunities." Yelvington v. Fleming, No. 3:07-cv-110, 2007 WL 1970866, at *6 (M.D. Fla. July 3, 2007)(citing Clemons v. Dougherty Cnty., Ga., 684 F.2d 1365, 1373 (11th Cir. 1982)). More specifically, for Plaintiff to move forward with a liberty-based claim, she must have pled facts sufficient to show that "(1) a false statement, (2) of a stigmatizing nature, (3) attending a governmental employee's discharge, (4) [was] made public, (5) by the governmental employer, (6) without a meaningful opportunity for an employee name clearing hearing." Cotton v. Jackson, 216 F.3d 1328, 1330 (11th Cir. 2000)(internal quotation marks and citation omitted).

Within her brief, Plaintiff makes factual allegations indicating that the government has damaged her reputation and foreclosed her future employment opportunities by publicizing false reasons for her termination. (Pl.'s Br., Doc. 33, at 4.) However, in her complaint, Plaintiff makes no factual allegations regarding (2) stigmatic harm or (4) publication. While Plaintiff has alleged that Officer Lee "defamed [her] work ethic and character" in a way that "ultimately affected [her]

10

livelihood," Officer Lee's statements were not made by a "government employer" or in relation to Plaintiff's termination. Consequently, Plaintiff has failed to present a plausible procedural due process claim based on a deprivation of a constitutionally-protected liberty interest.[2]

### B. Defamation Claim

Within their brief, Defendants do not advance any arguments as to the merits of Plaintiff's defamation claim. Instead, Defendants highlight three provisions of the Georgia Tort Claims Act ("GTCA"). First, "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." O.C.G.A. § 50-21-25(a). Second, "[t]he state shall have no liability for losses from: . . . libel, slander, or interference with contractual rights." Id. § 50-21-24(7). Third, "[n]o person, firm, or corporation having a tort claim against the state under this article shall bring any action against the state upon such claim without first giving notice" in accordance with section 50-21-26. Id. § 50-21-26(a).

Though it appears, based on these provisions, that Plaintiff's defamation claim cannot continue, the GTCA also

---

[2] Because Plaintiff is proceeding pro se, the Court must evaluate her pleadings with leniency. With that obligation in mind, one might argue that the Court should incorporate the factual allegations found in Plaintiff's brief into her complaint. However, by doing so, the Court would be "rewrit[ing] an otherwise deficient pleading in order to sustain an action" – a course the Eleventh Circuit has prohibited. GJR Invs., 132 F.3d at 1369.

provides as follows: "[N]othing in this article shall be construed to give a state officer or employee immunity from suit and liability if it is proved that the officer's or employee's conduct was not within the scope of his or her official duties or employment." Id. § 50-21-25(a). Accordingly, Plaintiff's defamation claim may continue if the statements in question were made outside the scope of Officer Lee's official duties or employment.

In Georgia, courts have not clearly identified "[w]hat constitutes actions taken within the scope of official duties or employment" for purposes of the GTCA. See Ferrell v. Young, 746 S.E.2d 167, 172 (Ga. Ct. App. 2013); Massey v. Roth, 659 S.E.2d 872, 874 (Ga. Ct. App. 2008). Instead, when applying this principle, Georgia appellate courts generally (1) note that the "scope" should be "broadly construed" and (2) give examples of what conduct has previously fallen within such scope. See id. Chief among these examples are sexual assaults by state police officers that have occurred during routine traffic stops and arrests. See Ferrell, 746 S.E.2d at 172-73.

Given this broad interpretation, the Court finds that Officer Lee's statements regarding Plaintiff's work behavior made while speaking over the telephone with Sergeant McNeil fall within the scope of her employment. See Rayburn ex rel. Rayburn v. Farnesi, 70 F. Supp. 2d 1334, 1341 (N.D. Ga. 1999)("Whether a

12

state employee is entitled to official immunity under the Georgia Tort Claims Act is a question of law to be decided by the Court."); Carter v. Glenn, 548 S.E.2d 110, 113 (Ga. Ct. App. 2001)("[I]f the relevant facts are not in dispute, whether official immunity is applicable is a question of law."). Yet, Officer Lee's act of sharing her letter outlining Plaintiff's shortcomings with multiple inmates is a tougher question. Unlike her over-the-phone explanation as to why Plaintiff was a bad worker, Officer Lee's publication of this letter does not relate to the medical prison's purpose of running a safe and efficient facility. Nevertheless, if a sexual assault committed by a police officer in the midst of a traffic stop occurs within the scope of his duties, it stands to reason that Officer Lee's publication occurred within the scope of her employment.

Based on this conclusion, Plaintiff has failed to assert a plausible defamation claim against Officer Lee. Furthermore, because it can have no liability for losses from libel or slander, Plaintiff has also failed to assert a plausible defamation claim against the State of Georgia. See O.C.G.A. § 50-21-24(7). As a result, Plaintiff's defamation claim is dismissed.

13

### III. CONCLUSION

For the reasons above, the Court **GRANTS** Defendants' motion to dismiss (Doc. 27). Therefore, the Clerk is directed to **ENTER JUDGMENT** in favor of Defendants Barnes, Jordan, Shepard, Conley, McNeil, and Lee, in their individual and official capacities, and to **TERMINATE** these Defendants as parties. Moving forward, only Plaintiff's FMLA claim against Defendant Georgia Department of Corrections remains.

**ORDER ENTERED** at Augusta, Georgia, this 30th day of March, 2016.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA